808 So.2d 726 (2001)
John SMITH and Marie Smith
v.
Lori ROUSSEL, Nolan Roussel and Allstate Insurance Company.
No. 2000 CA 1672.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
*727 Maurice J. LeGardeur, Jr., Covington, Counsel for John and Marie Smith Plaintiff-Appellees.
James S. Rees, III, Covington, Counsel for Allstate Insurance Company Defendant-Appellant.
William R. Alford, Jr., Covington, Counsel for Dr. Richard Celentano.
Before: WHIPPLE, KUHN, and DOWNING, JJ.
DOWNING, J.
Allstate Insurance Company appeals an assessment of some costs associated with a trial in which it was cast with expert witness and attorney fees allegedly not authorized by statute. These costs were assessed at a rule to show cause where Allstate claims it was neither an interested party nor present at the hearing. Allstate also appeals the award of judicial interest on these awards. For the following reasons, we reverse and render.

*728 FACTS
This appeal arises out of a dispute over the award of expert witness fees in a companion case between John and Marie Smith and Allstate.[1] In the judgment in this companion matter, the trial court specifically taxed Allstate with the cost of the expert testimony of the treating physician, Dr. Richard Celentano, the amount of which was to be determined at a hearing on another date. The Smiths had paid Dr. Celentano $2,250.00[2] in advance, which they allege was to cover his appearance and testimony at the trial set for August 30, 1999. The record reflects that the Smiths also paid Dr. Celentano $375.00 for a conference to assist their counsel with trial preparation. Also, in order to depose Dr. Celentano before the trial, Allstate was required to advance him another $750.00. The discovery deposition was taken on August 20, 1999.
On August 23, 1999, after the deposition was taken but before the August 30th trial date, the Smiths notified Dr. Celentano his testimony would not be needed and requested the return of their $2,250.00 advance payment. Dr. Celentano refused to return the money claiming the cancellation notice was too short and he had already blocked the time off his schedule.
The trial actually began on September 1, 1999, and, although Dr. Celentano did not testify, the Smiths introduced his deposition at trial in lieu of his testimony. After the trial, the court left the record open for post-trial memoranda. On November 18, 1999, the trial court issued written reasons concluding that the law and evidence were in favor of the Smiths and against Allstate. On December 15, 1999, the trial court entered judgment against Allstate assessing court costs against it and specifically ordering it to pay Dr. Celentano's expert witness fee, which was to be determined at a hearing on another date.
Meanwhile, the Smiths filed a motion entitled "Rule To Show Cause Why Expert Fees Should Not Be Set By The Court," and Dr. Celentano filed a "Rule To Show Cause Upon Subpoena Duces Tecum." Both rules[3] were heard on January 3, 2000. Allstate's attorney was notified of the hearing, but was not ruled into court and did not attend.
On February 2, 2000, Allstate filed a motion entitled "Motion To Tax Costs To Prevent Assessment Of Any Expert Witness Fees Of Dr. Celentano To Be Assessed As Costs To Defendant and/or Motion For New Trial On Plaintiffs Rule To Show Cause Why Expert Fees Should Not Be Determined By The Court And Upon Granting New Trial Why Dr. Celentano's Fees Should Be Cast Against Plaintiffs." On February 9, 2000, the Smiths filed an exception of res judicata. These matters was set for hearing on March 27, 2000. The Allstate counsel again did not attend the hearing.
On April 25, 2000, the trial court signed a judgment granting the Smiths' exception of res judicata and dismissing Allstate's motion to tax costs, etc..[4] In this judgment, *729 the trial court found in favor of the Smiths and against Allstate, assessing as costs Dr. Celentano's fees in the amount of $3,375.00 for "trial preparation and the rescheduling of patients while under trial subpoena, with credit due Allstate Insurance Company in the amount of $750.00 previously paid to Dr. Celentano for his deposition which was used at trial." The judgment further ordered Allstate to reimburse plaintiffs $2,625.00 plus legal interest for costs previously advanced by plaintiffs to Dr. Celentano prior to trial. The court also ordered Allstate to pay Dr. Celentano a witness fee of $2,625.00 plus $100.00 per witness for two witnesses who were present at the hearing on the cost issue, with interest.

ASSIGNMENTS OF ERROR
Allstate alleges that the trial court erred by:
1. Taxing costs against Allstate when Allstate was not a party to the rule to tax costs;
2. Finding that Allstate should reimburse the plaintiffs for the expert witness fees of the plaintiff's treating physician, who did not testify at trial;
3. Finding that Allstate should pay witness fees, in the amount of $100.00 per witness, for witnesses attending the hearing on the cost issue;
4. Finding that counsel for the expert witness, who did not testify at trial, was entitled to attorney's fees in the amount of $1,500.00 for services rendered in connection with the hearing on plaintiffs rule;
5. Finding that Allstate should pay judicial interest on the aforementioned sums from the date the judgment was signed until paid.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER ONE

Trial Court's Authority To Tax Costs
Allstate argues that the trial court had no authority to tax as costs against them the expert witness fees of Dr. Celentano in the January 3, 2000 rule to tax costs. We agree.
Louisiana Revised Statute 13:3666 provides in pertinent part as follows:
§ 3666. Compensation of expert witnesses; costs of medical reports and copies of hospital records; land surveyors
A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute *730 by the trial court shall form a part of the final judgment in the cause.
Under La. R.S. 13:3666B(1) a trial court can fix expert witness fees based upon its own observations and testimony presented at trial, whether on its own motion or on ex parte motion. State, Department of Transportation and Development v. Williamson, 585 So.2d 614, 618 (La.App. 2nd Cir.1991), affirmed in part as amended and reversed in part on other grounds, 597 So.2d 439 (La.1992). Here, the trial court determined the amount of expert witness fees based on the stipulation[5] between the Smiths and Dr. Celentano at a scheduled hearing on January 3, 2000, not from his observations and testimony at trial. Therefore, this method of taxing Allstate with costs for expert witness fees was not legally permissible, whether or not Allstate was present at the hearing.
Louisiana Revised Statute 13:3666B(2) provides the proper method for determining the correct amount of an expert witness' fee when not based on the trial court's evaluation of the expert witness' testimony and evidence adduced during trial. Louisiana Revised Statute 13:3666B(2) directs that a rule to show cause be brought "against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid...." (Emphasis added). The Smiths filed their "Rule to Show Cause why Expert Fees Should Not be Set by the Court" against Dr. Celentano, who is not the party cast in judgment for costs. While Allstate was properly notified of the hearing and should have had someone there, the procedure employed to tax costs against Allstate was legally impermissible.
We conclude, therefore, that the trial court's determination of Dr. Celentano's expert witness fees was legal error and we reverse the judgment of the trial court in this regard.

De Novo Review
The record appears complete and, as both parties addressed the issues in their appellate briefs, we will review the other issues raised on appeal de novo. As this court observed in Benware v. Means:
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence.
Benware v. Means, 98-0203, pp. 7-8 (La. App. 1st Cir.5/12/00), 760 So.2d 641, 646, writ denied, 2000-C-2215 (La.10/27/00), 772 So.2d 650.
Accordingly, from the record we review Allstate's other assignments of error.

ASSIGNMENT OF ERROR NUMBER TWO

Expert Fee When Witness Does Not Testify At Trial
Allstate claims that the trial court erred in ordering it to reimburse plaintiffs for their treating physician's expert witness fee when the he did not testify at the trial. Plaintiffs disagree and assert that since the physician's deposition was introduced at trial and formed a basis for the trial court's findings, the expert fee should be assessed as a court cost. Experts who testify by deposition are entitled *731 to have their expert witness fees taxed as costs, just as are experts who testify at trial, provided their depositions have been introduced into evidence. Bourgeois v. Heritage Manor of Houma, 96-0135, p. 6 (La.App. 1st Cir.2/14/97); 691 So.2d 703, 708. An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. Id. Therefore, Dr. Celentano's fees for preparation for and participation in the deposition are reimbursable expenses. However, a party can only have taxed as court costs the reasonable cost of time spent by the expert in gathering facts necessary for his testimony but not for time spent in consultation which only assists the attorney in preparation for the litigation. Cox v. East Baton Rouge Parish School Board, 165 So.2d 667, 675 (La.App. 1st Cir.1964), citing a long line of jurisprudence.
Generally, the amount and fixing of expert fees lies within the sound discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. Bourgeois v. Heritage Manor of Houma, 96-0135 at p. 7, 691 So.2d at 709. However, we can find no proposition in law, and the Smiths cite none, allowing a court to tax as costs the time set aside by an expert to testify when he did not testify. "The only cost a litigant can be required to pay are those provided for by positive law." Kohlmeyer & Co. v. Sobert, 273 So.2d 884, 886 (La.App. 1st Cir.), affirmed, 286 So.2d 342 (La.1973). Allstate paid Dr. Celentano $750.00 for his deposition, which testimony was used at trial. This sum is properly awardable as costs, although Allstate had already paid this sum to Dr. Celentano. There is no authority, however, for taxing the plaintiffs' advanced fee to Dr. Celentano of $2,250.00 as costs when the expense is not for his trial testimony or preparation. Also, as discussed above, the trial court cannot allow the $375.00 paid to Dr. Celentano for consultation to assist the Smiths' attorney with trial preparation. Therefore, the trial court erred in finding that Allstate should reimburse plaintiffs for these expert witness fees of the John Smith's treating physician. This assignment of error has merit, and we reverse the judgment of the trial court in this regard.

ASSIGNMENT OF ERROR NUMBER THREE

Awarding Witness Fees For The Rule To Tax Costs
The trial court awarded Dr. Celentano an additional fee of $2,625.00 for testifying at plaintiffs' rule on January 3, 2000. The trial court further awarded two witnesses from Dr. Celentano's office $100.00 each, apparently to support Dr. Celentano in his justification for this fee. Allstate alleges that the trial court erred in this award. We agree.
Neither Dr. Celentano nor his witnesses testified at the January 3, 2000 hearing. Nor were they subpoenaed to appear as witnesses, although Dr. Celentano was present as a party to both rules and the mover in one. He was not present to give expert testimony. We can find no proposition in law, and the Smiths cite none, allowing a court to tax as costs Dr. Celentano's time attending rules to which he was a party. Nor is there any legal authority to pay witness fees to Dr. Celentano's two witnesses who did not testify and were not subpoenaed. As we stated above, the only cost a litigant can be required to pay are those provided for by positive law. Kohlmeyer & Co. v. Sobert, 273 So.2d at 886. Therefore, the trial court erred in this award, and we hereby reverse the trial court on this assignment of error.

*732 ASSIGNMENT OF ERROR NUMBER FOUR

Attorney Fees In A Rule To Show Cause
It is well-settled in Louisiana that attorney fees are not allowed except where authorized by statute or agreed to by contract. State, Department of Transportation and Development v. Williamson, 597 So.2d 439, 441 (La.1992). We are aware of no statute authorizing attorney fees under the circumstances of this case, and the Smiths cite none. Allstate has no contractual agreement with Dr. Celentano or plaintiffs. Therefore, Allstate cannot be held liable for the attorney fees awarded in the dispute between those two parties. Consequently, the trial court erred in this award, and we hereby reverse the trial court on this assignment of error.

ASSIGNMENT OF ERROR NUMBER FIVE

Interest On The Aforementioned Sums
Legal interest does accrue on a judgment for costs. Cajun Electric Power Co-op. v. Owens-Corning Fiberglass Corp., 616 So.2d 645, 646-647 (La.1993). However, since we have found the law in favor of Allstate in its assignments of error and reverse the trial court in the award of all challenged costs, this assignment of error is moot. We therefore vacate any award of interest granted by the trial court.

CONCLUSION
For reasons stated, we reverse the judgment of the trial court and render judgment in favor of Allstate on all its assignments of error. Costs of this appeal are taxed to John and Marie Smith.
REVERSED AND RENDERED.
KUHN, J., concurs and assigns reasons.
KUHN, J., concurring.
I concur in the result reached by the majority.
This appeal highlights an ongoing problem faced by litigants who often must utilize the assistance of medical experts in an effort to sustain their requisite burden of addressing causation in personal injury cases. A medical expert is employed to formulate and present an opinion about causation of an injury. When the expert presents a bill for that opinion, the attorney representing the plaintiff must consider the effect protesting or refusing to pay may have on the subsequent ability to gather the requisite proof and, ultimately, on the likelihood of prevailing in the lawsuit. The defendant is then confronted with plaintiff's attempt of having these extraordinary sums assessed either as special damages or costs of court. In many cases, litigants are required by physicians to pay substantial sums before a deposition is allowed. If the required fee is not paid and a subpoena is issued for the witness, the witness beseeches the court to assist. In this event, the litigant becomes fearful of what the testimony ultimately elicited might bring. Are there presently any standards setting reasonable costs for deposition testimony? Are courts obligated to set as expert fees any amount requested? Is there a vehicle in place for litigants to urge grievances when excessive fees are demanded? Is there a vehicle in place to insure that medical expert fees for testimony and opinions are reasonable?
Presently, the Baton Rouge Bar Association has a joint committee consisting of attorneys and medical doctors and, through that committee, guidelines have been offered to assist the members of the Bar who find themselves facing such a dilemma. I urge the Medical/Legal Inter-professional Committee of the Louisiana State Bar Association to consider investigating *733 and researching this situation and to provide guidance on a statewide basis.
NOTES
[1] In a companion case also decided this day, John Smith, Marie Smith v. Lori Roussel, Nolan Roussel, Allstate Insurance Company, 00CA1028 (La.App. 1st Cir.6/22/01), ___ So.2d ___, Allstate appeals an unfavorable judgment wherein the trial court found Allstate liable for personal injuries to John and Marie Smith. The underlying facts are set out more fully in that opinion.
[2] Dr. Celentano required advance payment of $750/hour for a minimum of three hours totaling $2,250.00.
[3] The Smiths' rule was filed on September 3, 1999 and Dr. Celentano's rule was filed on September 30, 1999.
[4] This judgment addresses the issues raised in the January 3, 1999 hearing, although this date is not referenced in the judgment.
[5] The Rules heard on January 3, 2000 manifested an intention to resolve the dispute between the Smiths and Dr. Celentano over fees charged by summary rule to tax costs. This is improper. Weber v. Charity Hospital at New Orleans, 459 So.2d 705, 708 (La.App. 4th Cir.1984), reversed on other grounds 475 So.2d 1047 (La.1985).